LAND, J.
By Act No. 17, p. 17, of 1908, the General Assembly of the state of Louisiana ratified the action of the Governor in directing, and the action of the Attorney General in instituting, the suit at bar to set aside and annul a lease made on the 11th day of March, 1897, by the defendant board to Thomas Nicholson and others of certain real estate in the city of New Orleans, situated in the square bounded by Baronne, Canal, University Place, and Common streets, and to restore said property to the said board to be administered according to the Constitution and laws of the state governing said board in its administration of said property.
Pleadings.
“The petition of the state of Louisiana on the relation of Walter Guión, Attorney General, respectfully represents:-
“That in pursuance of Act 43 of 1884, approved July 5, 1884, which became a part of the Constitution of 1879 by approval of the electors of the state, and now forming a part of and ratified by the Constitution of 1898, the direction, ■ control, and administration of the property situated in the square bounded by Baronne, Common, Dryades, and Canal streets, property of the state of Louisiana, which had been dedicated by the state to the use of the university of the state, was transferred to the Board of Administrators of the Tulane Education Fund.
“That on the 11th day of March, 1897, the said board did, through its president, Charles E. Fenner, pretend to lease the said property to one Thomas Nicholson for a period of ninety-nine (99) years, at an annual rental of ten thousand dollars ($10,000).
“That said so-called lease resulted from a proposition of said Thomas Nicholson, submitted to the board of administrators aforesaid on the 16th of December, 1896.
“That at the time of said proposal, and at the time of the said pretended lease, there was an agreement between the said Thomas Nicholson, Sam Henderson, Jr., and Charles Payne Fenner that, should his said proposal be accepted, the said Thomas Nicholson was to transfer all his right, title, and interest in and to said so-called lease unto an incorporated company, which was to be organized immediately for that purpose.
‘That the Tulane Improvement Company was organized under the laws of the state of Louisiana, with its domicile in the city of New Orleans, on the 25th day of March, 1897, and said Thomas Nicholson transferred to it the said so-called lease, in accordance with his preexisting agreement just referred to.
*435 “That at the time of the submission of the ;said proposition on December 18, 1896, Charles E. Fenner was president of the Board of Administrators of the Tulane Education Fund.
“That he (C. P. Fenner) and Sam Henderson, Jr., practiced law in the city of New Orleans, La., under the firm name of Fenner, Henderson .& Fenner.
“That he owned one half of the Medical Building, situated in Baronne street, opposite the property hereinabove referred to, and that Charles P. Fenner and Sam Henderson, Jr., owned the other half.
“That the said Charles E. Fenner, Charles P. Fenner, and Sam Henderson, Jr., knew that there were other parties seeking to purchase or lease the said property, which had been dedicated to the use of the University of Louisiana, with the object of erecting a medical building thereon, and that the moving cause for seeking the lease of that property was to prevent injury to the said property known as the ‘Medical Building’ of which they were, owners, or loss or injury to themselves as owners thereof.
“That the said Charles Payne Fenner and the said Sam Henderson, Jr., communicated that fact to, and consulted over it, in connection with that proposal, with, the said Charles E. Fenner, and that, at the time of the proposal, and at the time of the execution of the said so-called lease, the said Charles E. Fenner knew, as president of the Tulane Education Fund, that the plan was conceived for the purpose and with the object of protecting his interest in the property known as the ‘Medical Building,’ to the loss and injury, however, of the Board of Administrators of the Tulane Education Fund.
“Now, petitioner alleges that Thomas Nicholson was not the real lessee; that Charles E. Fenner, as president of the Board of Administrators of the Tulane Education Fund, the trustees of the said property, was prohibited by law from leasing the said property to himself, or to have directly or indirectly any interest in any such lease.
“That he had both a direct and indirect interest in the lease so executed, and that the said lease was and is in fraudem legis, contra bonos mores, against public policy, and absolutely null and void.
“That, subsequent to the formation of the defendant company, the Tulane Improvement Company, the said Charles E. Fenner, president of the Board of Administrators of the Tulane Education Fund, Walter C. Flower, a member of said board, Mrs. Carrie Payne Fenner, wife of the president, Charles Payne Fenner, son and partner of the said president, and co-owner with him of the Medical Building, and Sam Henderson, Jr., relative and partner of the said president, and co-owner with him of the Medical Building, became the owners of all the bonds and stock of the Tulane Improvement Company, and thus became the only ones having any interest in the said so-called lease.
“That the said Charles E. Fenner knew at the time of the Nicholson proposal, and at the time of th'e signing of the said so-called lease, that Charles Payne Fenner, his son and law partner, and co-owner with him of the Medical Building, and Sam Henderson, Jr., his relative and law partner, and co-owner with him of the Medical Building, were the real parties to the transaction.
“That he knew that Thomas Nicholson was a heavy debtor to the said partnership for fees, that he did not have the money necessary to finance the transaction, and that he was a strawman, a person interposed.
“That the knowledge of the said Charles E. Fenner, president of the board, was the knowledge of the board, and, moreover, that on December 18, 1896, at a special meeting called for the purpose of considering the Nicholson proposition, he informed the board that his son and relative and law partners would be interested in said proposed lease.
“Petitioner alleges that the said so-called lease was made in violation of law, in that the president of the lessor was interested with the lessee therein, and that all the parties, now interested in it knew, and were bound to know, at the time of the acquisition of their interest, the law and all the facts hereinabove set out.
“Petitioner further alleges that the said lease was made in violation of Act 43 of 1884 and the constitutional amendment of 1884; and that, if the Board of Administrators of the Tulane Education Fund or the lessee pretend that the said lease was made under color of Act 94 of 1890, petitioner avers that said Act 94 of 1890 did not authorize the making of said lease; and that, if said act does provide for the making of said lease, said act is in violation of the constitutional amendment of 1884, and for that reason absolutely null, void, and of no effect.
“Petitioner further alleges: That the said pretended lease is now, and has always been, unreasonable, oppressive, and made for an inadequate consideration, and to the. injury and detriment of the Tulane University of Louisiana; therefore, for this reason also, null and void ab initio.
“That the defendant the Tulane Improvement Company should be compelled to give a full and complete accounting to petitioner since the date of the said so-called lease, and'that it should be required to deliver to petitioner said property free of all incumbrances, and pay over to the petitioners all sums due by it by reason of its uses and enjoyment of said property in order that the same may be by petitioner turned over to the Board of Administrators of the Tulane Education Fund, to be by the said board administered to the use of Tulane University of Louisiana, as contemplated by law at the time said property was by your petitioner originally delivered to said board.
“That, though the said board of administrators knew at the time of the said proposal, at the time of the acceptance thereof, and at the time of the signing of the contract embodying said so-called lease, that the said president, his *437 son, and relative were the real parties in interest, and that such a contract was contra bonos mores and against public policy, it persisted therein.
“That, subsequently, on the 12th oí June, 1898, the whole matter was again brought to the attention of the said board, and that at that time the said board was informed that O. B. Fenner, his 'family, and his fellow member, Waiter C. Flower, were the Tulane Improvement Company, the lessee.
“That in spite of the said knowledge, the said board took no action other than to appoint a committee of its own members to report thereon, and the said board was repeatedly urged to institute legal proceedings to test the validity of said lease.
“That, instead of so doing, it again employed a commission of. lawyers to investigate and report upon the ethical and legal aspect of its actions and doings in the premises, and persisted, and still persists, in its refusal to submit the matter to the courts of the state for judicial determination.
“Petitioner alleges that said refusal is against the interest of the said Tulane University, contrary to the duties of the said board as trustee of the property of the state, and petitioner institutes this suit to conserve the welfare of the university.”
To this petition was appended an appropriate prayer for the cancellation of the lease.
The Board of Administrators -of the Tulane Education Fund filed the following answer:
“Further answering, respondent admits that, under and by virtue of the legislative enactment and the Constitution of the state of Louisiana. there was, prior to the 11th day of March, 1897, vested in respondent the direction, control, and administration of the property situated in the city of New Orleans in the square bounded by Baronne, Common, Dryades, and Canal streets, referred to in plaintiff’s petition; and respondent avers that it was by law specially authorized, with the consent of the Governor of the state, to lease said property for the purpose of revenue under certain conditions named in said statute.
“Further answering, respondent avers that, acting within the discretion and power vested in it, and subject to all the conditions of said statute, and with the consent and approbation of the Governor of the state, it did execute on the 11th ’day of March, 1897, a lease of said property to one Thomas Nicholson, for a period of 99 years, at an annual rental of $10,000, payable in advance, and that said lease resulted from a proposal made by the said Thomas Nicholson to your respondent on December 16, 1896.
“Further answering, respondent avers that if, at the time said proposal was made and said lease was executed, there was an agreement between said Nicholson and Samuel Henderson, Jr., and Charles Payne Fenner, to the effect that, if the proposition of said Nicholson be accepted, said Nicholson would transfer all his rights thereunder to a company to be incorporated, your respondent was not advised of this fact; and your respondent avers that, if it had been advised of this agreement and intention, it would have attached no significance thereto.
“Further answering, respondent admits the organization of said Tulane Improvement Company and the transfer to it by said Nicholson of said lease.
“Further answering, respondent admits that on December 18, 1896, Charles E. Fenner was the president of the Board of Administrators of the Tulane Education Fund..
“Further answering, respondent avers that, at the time said proposal was made by said Thomas Nicholson, and at the time said lease was made, respondent gave no consideration whatsoever to the ownership of the Medical Building situated on Baronne street in this city ; and it avers that, in accepting the proposal of said Nicholson and in making said lease, it had no concern with, and did not consider, the effect the making of said lease would have upon said Medical Building and its owners, as it accepted said proposal strictly on its own merits.
“Further answering, respondent admits that an application was made to it for a gratuitous option to purchase the said property for $150,-000 cash, but that, at the time said gratuitous option was applied for, respondent did not know and was not informed what character of building was to .be erected on said property if same were purchased by the applicant for said option; and that respondent did not give further consideration to the application for said option to purchase at the price aforesaid, for the reason that respondent considered the proposition of said Nicholson, for a lease of said property, at an annual rental of $10,000 payable in advance, to be moz'e advantageous to respondent than a sale of said property at the price aforementioned.
“Further answering, your respondent avers that it was not aware that the moving cause which impelled Thomas Nicholson and his associates to obtain a lease of said property was to prevent injury to said Medical Building by the erection of a competitive building; but respondent avers that, if it had been advised of this motive, it would not have attached any importance thereto beyond considering it a reason why the parties in interest would pay a larger price than otherwise for the property necessary to protect their interest.
“Further answering, respondent avers that neither your respondent nor any of the members of respondent board conceived or considered or knew at any time that they were protecting the interest of the owners of the Medical Building at the expense of, or to the injury of, respondent; but, on the contrary, respondent avers that, in accepting the proposal of said Nicholson, it was actuated by no purpose or motive *439 other than to conserve the best interests of Tulane University.
“Further answering, respondent avers that the property herein involved was utterly inadequate as a site for Tulane University; that it was essential to the growth of the university that ampler grounds and more commodious buildings should be provided; that the expenditure required for such provision could not have been undertaken by the board without the sale or lease of this property; that, therefore, respondent considered it absolutely necessary that said property should be sold or leased on the best obtainable terms; and that this necessity had been submitted to and recognized by the state in Act 94 of 1890.
“Further answering, respondent avers that, for several years prior to the acceptance of the proposition of said Thomas Nicholson, respondent persistently endeavored to lease or sell said property, and had authorized its agents to lease it for 99 years at $10,000 per annum; that respondent considered the rental of said property on said basis a better and more advantageous disposition of said property than a sale at the price and sum of $150,000; and that, notwithstanding the efforts of respondent and the members of respondent’s board, and notwithstanding the fact that respondent had employed competent real estate men in the city of New Orleans to make a sale of said property, or to effect a lease thereof, respondent had failed in said effort up to the time of said Nicholson’s proposal.
“Further answering, respondent denies that at the time of the execution of said lease Charles E. Fenner had any interest whatsoever therein, and respondent denies that said lease was in fraud of law, was against good morals, or public policy; but, on the contrary, respondent avers that said lease in all of its parts, and in every intendment, was made in perfect good faith and for the fullest and fairest consideration according to the conditions then existing.
“Further answering, respondent denies that Thomas Nicholson was a nominal lessee interposed on behalf of Charles E. Fenner, Charles Payne Fenner, and Samuel Henderson, Jr.; and in this connection respondent avers that, when the proposal of said Nicholson was received, the said Charles E. Fenner notified the respondent board that the said Sam Henderson, Jr., and the said Charles Payne Fenner were interested with said Nicholson in said proposal; and respondent avers that, in view of said disclosure, said Nicholson could not be considered a person interposed.
“Further answering, respondent says that, when the proposition of lease was submitted, Charles E. Fenner recused himself, on the ground of his relationship to Charles Payne Fenner and Sam Henderson, Jr., and that, throughout the negotiations and discussions which followed, said Charles E. Fenner scrupulously abstained from taking any part whatsoever therein.
“Further answering, respondent denies that said lease was made in violation of law, or that its president had any interest whatsoever in it; and respondent avers that, under the law, it had plenary power and authority to make said lease; that Act 94 of the General Assembly of the state of Louisiana for the year 1890 is a valid and constitutional legislative enactment.
“Further answering, respondent avers that the lease of said property at a rental of $10,-000 per annum, payable in advance, was the best proposition offered or that could have been obtained for the disposition of said property, that said property was yielding no revenue to your respondent, and that the needs of your respondent were urgent; and respondent avers that neither at the time of the making of said lease nor thereafter, until the phenomenal enhancement of values in this city, did any one suggest that the price of said lease was not full, fair, and adequate.
“Further answering, respondent avers that, while it was empowered to construct buildings on said property for the purpose of revenue, it did not consider itself justified in assuming the manifest risk of the venture, nor had it the funds necessary therefor, and that respondent was, therefore, driven to the necessity of disposing of said property by sale or lease, which respondent did under the most favorable terms then obtainable.
“Further answering, respondent avers that it has acted according to its best judgment in the interest of Tulane University, and that, if respondent failed to realize the possible prospective value of said property, such failure was not due to any lack of consideration, investigation, or effort, but was solely due to the fact that respondent was not gifted with prescience.
“Further answering, respondent avers that it has discharged all of its duties in the premises with fidelity and without favor to any adverse interest, and that it has been advised by those who, in its opinion, are qualified to judge, that the contract of lease in question, from its inception to the present date, was and is a fair and valid contract, whether judged by moral or legal standards, or by both, and that, in the face of this competent, disinterested advice, it would not have been justified in instituting the legal proceedings suggested in plaintiff’s petition.”
The Tulane Improvement Company excepted:
(1) That the Attorney General was without right or power to bring this suit.
(2) That the petition filed by the state set forth no right or cause of action against respondent.
The district court overruled these exceptions, and the Tulane Improvement Company thereupon filed the following answer:
“Further answering, respondent shows that it filed an exception herein to the right of the At *441 torney General of the state to bring this suit without the authority of the Legislature of the state, and it advised him that its purpose was to have the state of .Louisiana properly in court in order that there might be an end of this litigation.
“That, subsequently, Act 17 of the General Assembly of Louisiana of 1908 was passed, which gave the Attorney General the necessary power to prosecute the suit, and respondent thereupon abandoned, and does now abandon the said exception.
“Further answering, respondent admits the execution of the contract of lease of the Board of Administrators of the Tulane Education Fund on March 11, 1897, by notarial act passed before Hughes T. Gurley, late notary public for this parish, a copy whereof is annexed hereto as part of this answer.
“And respondent avers that said contract of lease was made by said board in the exercise of its legal powers under Act 43 of 1884, adopted as a constitutional amendment, and under Act 94 of 1890 of the acts of the General Assembly of Louisiana, and that said lease has always been and is a valid and binding contract, made in good faith between the parties hereto for an adequate consideration under the following circumstances, to wit:
“That on or about December 16, 1896, Thomas Nicholson, who was then sojourning in the city of New Orleans, made a proposition to the said board of administrators for the lease-of the property described in said contract for a period of 99 years to begin October 1, 1S97, for an annual rental of $10,000 payable in advance.
“That, when said Nicholson made said proposition, there were interested with him therein Sam Henderson, Jr., for and on account of himself and Charles Payne Fenner, and John S. Rainey, for and on account of himself and Cohen M. Soria. That one of the conditions of said proposition was that said lease, if accepted, should be transferred by said Nicholson to any party or parties as he might elect.
“That the said proposition of said Nicholson was considered and discussed by the said board of administrators at a meeting held December 18, 1896, and always thereafter, purely as a business proposition and was accepted by them as such in the exercise of their best judgment and discretion, as to the interest of the Tulane Education Fund, and without any purpose, intention, and desire to favor the said lessor or any member of the said board by the said administrators.
“That Charles E. Fenner, the father of said Charles Payne Fenner, and relative of said Sam Henderson, Jr., was at that time president of the Board of Administrators of the Tulane Education Fund, and .was the partner in the practice of law in the city of New Orleans with said Sam Henderson, Jr., and Charles Payne Fenner, and that said three parties owned at that time the Medical Building, situated in Baronne street nearly opposite the property described in said contract of lease, in the proportion of one-half to said Charles E. Fenner and one-fourth to Sam Henderson and one-fourth to Charles Payne Fenner.
“That, when the plans for making the proposition to lease said property had been formulated, said Henderson approached the said Charles E. Fenner in regard thereto, and was told by the latter that he would take no part therein, but that all negotiations must be had with Robert M. Walmsley, the vice president of said board of administrators. And all negotiations had thereafter were with said “Walmsley, with Cartwright Eustis, a member of the real estate committee of said board of administrators, and with other members of the said board, always excepting the said Charles E. Fenner.
“That the subject-matter of said lease was the object of frequent meetings of the real estate committee and of the law committee of the said board of administrators and several meetings of the said board of administrators, and that the. same was considered by its committees and by the said board of administrators in all of its aspects and with reference purely to the interest of the Tulane Education Fund, and with reference to the interest of no other person or corporation whatsoever.
“That at the meeting of the members of the board prior to the 18th of December, 1896, when said proposition was first submitted to said board of administrators, said Charles E. Fenner stated that his relative and law partner, Sam Henderson, Jr., and that his soil and law partner, Charles Payne Fenner, were interested in said proposition. That he desired to take no part in said meeting and desired to withdraw therefrom.
“That, at the unanimous request of the members of the said board, said Charles E. Fenner remained at the said meeting, but took no part therein, nor in any subsequent meetings relating to said subject-matter, and in no way, by word, act, or deed, influenced or persuaded any member of the said board in his action upon said lease.
“That said Charles E. Fenner had no interest whatever in said proposition, either directly or indirectly, and that his action in the premises was open, candid, and above criticism.
“That the said board of administrators had, for some time previous to the proposition of said Nicholson, been attempting by advertising through real estate agents to sell the said property at a price of $150,000 or to lease the same for a period of 99 years; and that no proposition had ever been received despite the numerous efforts which had been made, which, in the opinion of said board, was as advantageous to them as was the proposition submitted by the said Nicholson; and that the proposition of said Nicholson represented the utmost which said board had for a long time previous been endeavoring to obtain for the said property.
“That the said board was under the absolute necessity, in its opinion, of disposing of said property, either 'by lease or sale, as the same *443 was totally unproductive, and a revenue therefrom, or from the capital represented thereby, was imperatively needed for the support of Tulane University.
“That said Nicholson was not a strawman. That he was not a person interposed in any sense, except that he represented himself and said Henderson, Charles Payne Fenner, ,T. S. Rainey, and C. M. Soria, all to the knowledge of the said board of administrators.
“That said Nicholson was not interposed for said Charles E. Fenner, nor for the wife of Charles E. Fenner, nor Walter C. Flower, then a member of said board, and that neither Charles E. Fenner, nor his wife, nor Walter C. Flower, had any interest whatsoever in said proposition or in the said lease when the same was made.
“That after said lease had been so made to said Nicholson on March 11, 1897, respondent corporation was organized by notarial act passed before Jefferson C. Wenck, notary public, in this city, on ‘March 25, 1897, by said Nicholson, Henderson, and Rainey, who, with said Charles Payne Fenner and said Soria, were the only persons having any interest whatever in said corporation, and on July 14, 1897, by act before Jefferson C. Wenck, notary public, said Nicholson transferred and assigned to respondent said lease for a consideration of $10,000 cash.
“That, subsequent to the making of said lease, and about the summer of 1897, said Nicholson became embarrassed in his financial matters, and subsequently assigned and transferred his interest in said Tulane Improvement Company to said Charles Payne Fenner, said Henderson, and Mrs. Carrie Payne Fenner, wife of Charles E. Fenner, for a consideration about equal to the amount which same had cost him, and that previous thereto and some time after said lease had been made said Mrs. Fenner had acquired, by purchase from said Henderson and Charles Paj'ne Fenner, one-third of their joint interest in said Tulane Improvement Company. That said Mrs. Fenner acquired said interest as her separate and paraphernal funds.
“That subsequently, on January 29, 1898, respondent closed a contract for the sublease of a portion of said property to Klaw & Erlanger, for the whole period of the term of said lease, said portion being nearly two-thirds the area of the property so leased by it, for an annual' rental of $6,000. Said Board of Administrators of the Tulane Education Fund acquiesced in and assented to the sublease in the exercise of its rights, under the terms of its lease to said Nicholson; said contract of sublease having been made by notarial act passed before Lamar C. Quintero, notary public, on January 29, 189S. a copy of which will be produced on the trial hereof.
“That meanwhile the portion of said property not subleased to Klaw & Erlanger had remained unimproved, and did remain unimproved for some months thereafter. That, after said sublease had been made, the said John S. Rainey stated that he and Mr. Soria were averse to putting up more money to further the lease enterprise. That he, acting for himself and said Soria, authorized said Henderson to sell the stock in respondent belonging to said Rainey and Soria, if necessary, at two-thirds of the-amount which they had paid for their interest in the said company, and that said Henderson made numerous efforts with a number of moneyed men in this city to sell the said stock of said Rainey and Soria. That, except as hereinafter set forth, said Henderson was unsuccessful in making said lease; the capitalists approached having no confidence in the financial success of the undertaking.
“That some time in the year 1S98, and subsequent to the making of said sublease to Klaw & Erlanger, said Charles Payne Fenner was thrown by accident on a journey from this city with Walter C. Flower, then mayor of this city, and a member of the Board of Administrators of the Tulane Education Fund, at the time when said lease was made and at the time herein now referred to. That said Charles Payne Fenner endeavored to enlist the interest of said Flower in said undertaking by having him purchase the said interest of said Rainey and Soria, and did enlist his interest therein. That, on the return of said Flower to the city shortly thereafter, said Henderson effected a sale to him of the said stock of said Rainey and Soria at its cost to him, and said Flower thereupon became the owner of one-third of the stock of respondent, and his estate is now the owner thereof.
“That, after the acquisition of said interest of said Flower, said Henderson, acting for respondent, procured the said Flower to purchase ultimately $80,000 of the bonds of respondent for the purpose of improving the said property and deriving a revenue therefrom, and at or about the same time induced said Charles E. Fenner to purchase ultimately $10,000 of bonds of the same character, and thereby said Flower and said Charles B. Fenner became the holders of bonds of respondent in the amount set forth. That the estate of said Flower is now the holder of said bonds so taken by him, and the Board of Administrators of the Tulane Education Fund subsequently acquired by purchase the bonds of Charles E. Fenner, as it did the stock of respondent owned by Mrs. Carrie P. Fenner and Charles Payne Fenner.
“That all of the above and foregoing transactions were open, honest, and fair, and made without concealment. 'That the fact of said lease being- under consideration by the said board of administrators was a matter of public knowledge at the time, and was commented upon by the newspapers of this city. That there was no adverse criticism thereof, nor any suggestion of impropriety in the said dealings, nor of inadequacy of price, and that there was in-fact no illegality or impropriety in said acts,, and no inadequacy of price in said lease.
“That said matter was a matter of record at the time that it transpired, March l4. 1897, more than 10 years before the institution of this suit, and that the action of plaintiff herein, if *445 any it has or claims, is 'barred and prescribed by the prescription of 10 years.
“Further answering, respondent shows that the Board of Administrators of the Tulane Education Fund had a legal right by the terms of its contract with the state of Louisiana, made by constitutional amendment adopted by the people of the state of Louisiana and set forth in Act 43 of the Acts of the General Assembly of the State of Louisiana of 1S84, to lease the said property, and that said board did lease said property in the exercise of its judgment and discretion to respondent, as set forth in said notarial act passed before Hughes T. Gurley, notary public, March 11, 1S97, and that any law of the state of Louisiana, or any decision of any of its courts, which might declare, or attempt to declare, the said lease to be invalid, would impair the obligation of the contract evidenced by said lease, and by the constitutional amendment adopted by the people of the state of Louisiana, evidenced by Act 43 of 1884, the same being a contract between the state of Louisiana and the Board of Administrators of the Tulane Education Fund, and that such impairment of such contract is and would be contrary to the ’Constitution of the United States of America, and particularly to the first paragraph of section 10 of article 1 thereof, and to the fourteenth amendment to said Constitution of the United States, which provides that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws, both of which provisions respondent specially pleads as a defense to this action.”
On the 14th of June, the day of the trial of the case, the following motion was filed:
“On motion of Walter Guión, Attorney General, and of W. S. Parkerson, associate counsel, and on suggesting to the court that, since the decision of the Supreme Court in the case of John B. Levert v. Daily States Publishing Company, they have reached the conclusion that the issue involved in this case depends solely upon the questions as to whether or not the contract of lease sought to be annulled was in fraudem legis, contra bonos mores, and against public policy, and upon the constitutionality vel non of Act 94 of 1890; that the allegation in the petition that the lease was made for an inadequate consideration is totally immaterial; and that they are desirous of withdrawing and abandoning said charge and of reiterating the allegations in the petition that the contract is in fraudem legis, contra bonos mores, and against public policy, and that Act 94 of 1890 is unconstitutional, being in violation of the constitutional provision of Act 43 of 1884 and of article 4G and article 29 of the Constitution of 1879.”
On the same day the state filed this supplemental and amended petition:
“The supplemental and amended petition of the state of Louisiana, on the relation of Walter Guión, Attorney General, leave of court to file same first being had and obtained, respectfully represents:
“That in the original petition filed herein petitioner sets out:
“ ‘That, if the Board of Administrators of the Tulane Education Fund or the lessee pretends that said lease was made under color of Act 94 of 1890, petitioner avers that Act 94 of 1890 did not authorize the making of said lease. Said act is in violation of the constitutional amendment of 1884.’
“That, since the filing of said petition, the defendant in the above-entitled and numbered cause sets up in its answer:
“ ‘That the contract of lease was made by said board in the exercise of its legal powers under Act 43 of 1884, adopted as a constitutional amendment and under Act 94 of 1890 of the acts of the General Assembly of Louisiana.’
“Now petitioner avers that, in addition to the reasons already set out why said act is in violation of the Constitution, said act is in violation, of article 29 of the Constitution of 1879.”
There was trial by jury and a great deal of testimony taken, and the jury unanimously rendered a verdict in favor of the state of Louisiana.
A new trial was asked for' and refused. Judgment was entered upon the verdict, and from that judgment the Board of Administrators of the Tulane Education Fund and the Tulane Improvement Company prosecute this appeal.
Opinion.
The first question in logical order and importance is whether the state of Louisiana has a right to maintain this suit.
Paul Tulane, a man of wealth, who had formerly resided in the state of Louisiana, in the year 1882 expressed to certain citizens of this state his intention to donate valuable real estate to him belonging in the city of New Orleans for the purpose of fostering higher education in this state.
The said citizens thereafter organized themselves into a corporation, under the name of the “Administrators of the Tulane Education Fund,” and Paul Tulane donated to said administrators nearly $1,000,000 the *447 revenues whereof were to be used for the promotion and encouragement of intellectual, moral, and industrial education.
In the year 1884 the said administrators made known to the General Assembly their desire to take charge of the University of Louisiana in the city of New Orleans, a state institution, and to devote the revenues of the property then owned or thereafter to be owned by said board to its expansion and development, and upon the adoption of a constitutional amendment to that end, to apply till the revenues of property then owned or thereafter to be acquired by them to the creation and development in the city of New Orleans of a great university, whereby the blessings of higher education, intellectual, moral, and industrial, might be given to the youth of this state.
The General Assembly and the Board of Administrators of the Tulane Education Fund entered into negotiations which resulted in the enactment of Act No. 43, p. 48, of 1884, which was subsequently adopted as a constitutional amendment, because of the doubt of the power of the Legislature to transfer to said board all the rights, privileges, and property of the university of Louisiana and to exempt all the property of the board from taxation.
Pending the submission of the constitutional amendment, it was left optional with the board* to avail themselves of the provisions of the act, and (it was provided that:
“In case the said constitutional amendments as aforesaid be not ratified the said board should not in any way be hold bound by its said action, but shall have the right to relieve itself of all liability growing out of said action by turning over to the Governor of the state, any property received by it from the state, or from the administrators of the University of Louisiana.”
A number of the .provisions of the act relate to its acceptance by the board pending the submission of the said constitutional amendment or in case of its defeat. But, as the amendment was adopted, such provisions do not concern us.
The act, in all its provisions, was declared to be a contract between the state of Louisiana and the Administrators of the Tulane Educational Fund, irrevocably vesting said Administrators of the Tulane Educational Fund with the powers, franchises, rights, immunities, and exemptions therein enumerated, and thereby granted, and irrevocably binding said administrators to develop, foster, and maintain the university as aforesaid in the city of New Orleans.
The board, however, agreed and bound themselves “to waive all legal claim upon the state of Louisiana for any appropriation, as provided in the Constitution of the state, in favor of the University of Louisiana.” Under article 230 of the Constitution of 1879, it was made the duty of the General Assembly to make provision for the support of the university of Louisiana, not to exceed $10,000 annually.
By this legislative contract the state was forever relieved of the burden of maintaining and supporting the University of Louisiana by annual appropriations or otherwise, and the Administrators of the Tulane Education Fund bound themselves to use the revenues and income of the property donated by Paul Tulane, as well as the revenues of all other property thereafter to be held, owned, or controlled by them, to develop, foster, and maintain, to the best of their ability and judgment, the University of Louisiana, thereafter to be known as the “Tulane University of Louisiana,” and, upon the adoption of the act as a constitutional amendment, the said administrators bound themselves to perpetually use the powers conferred by the act, for the purpose of creating and maintaining in the' city of New Orleans a great university, devoted to the intellectual, moral, and industrial education and advancement of the youth of this.state, under the terms of the donation *449 of Paul Tulane and the provisions of the act.
The said administrators further agreed to give continuously in the academic department free tuition to one student from each Senatorial and from each Representative district or parish to be nominated by its member in the General Assembly. Under this provision free tuition is perpetually assured to more than 100 of the youths of this state, without cost to the public fisc.
The act provided that its adoption as a constitutional amendment should operate as an exemption from taxation of the real estate of the board, not otherwise exempted, not exceeding in value $5,000,000; the exemption to remain in force as long as the revenues of said board are directed to the maintenance of the University of Louisiana as aforesaid.
It is manifest on the face of Act No. 43 of 1884 that the state was contracting with a private corporation organized by notarial act under the general laws of the state. In the argument of the case the Attorney General admitted that the “Administrators of the Tulane Education Fund” is not a state institution. It cannot be otherwise under the facts of the case and the provisions of said statute. The General Assembly recognized the board as a private corporation capable of making a perpetual and irrevocable contract with the state of Louisiana. The act of 1884 expressly repealed section 1366 of the Revised Statutes of 1870, giving the Legislature power of supervision and control over the University of Louisiana. It goes without saying that the Legislature cannot make such a contract with a state institution or renounce its powers of supervision and control over a state agency.
Section 2 of the act declares that the board shall have full direction, control, and administration “of all the property belonging to the state of Louisiana, and now dedicated to or used by the University of Louisiana, as well as all property controlled or used by the said University of Louisiana.” It was directed that the Board of Administrators of the University of Louisiana turn over to the Board of Administrators of the Tulane Education Fund all the property, rights, books, papers, and archives now under their administration or control. And it was further enacted as follows:
“An inventory shall be made of all the property, movable and immovable, belonging to the University of Louisiana, and transferred by this act to the control and administration of the Administrators of the Tulane Education Fund, by two appraisers to be appointed for that purpose by the Governor of the state and sworn, which appraisement shall be filed in the office of the 'Secretary of State, as evidencing the description and appraised value of the property so transferred, and also in order that the liability of the said Administrators of the Tulane Education Fund may not be extended’beyond the return of the property, so transferred, in any contingency; provided further, that the property, so transferred, may not be sold or disposed of except under legislative sanction; provided further that if the ‘Tulane University of Louisiana’ as herein established, should cease to use the property, and exercise the privileges, franchises and immunities, now under the control and administration of, and enjoyed by the University of Louisiana as now constituted and transferred by this act, for the exclusive purposes intended by this act, then and in that event, the state of Louisiana shall have the right to resume the custody, control and administration of said property, and the exercise of said privileges, franchises and immunities.”
The only right of action conferred, by the act on the state of Louisiana under said legislative contract is set forth in the foregoing provisions, and the only liability of the board is restricted to the return of the property to the state in the event the board should fail to carry out its part of the agreement. If the board has unlawfully disposed 'Of the property without legislative sanction, . the right of the state of Louisiana, if any, is to sue directly to annul the contract and recover the property for the state.
The suit at bar is one to annul a lease made by the Administrators of the Tulane Education Fund, and for an accounting of revenues, in order that the property and rev-i enues may be, as prayed for in the petition, I “turned over to the Board of Administrators *451 of the Tulane Education Fund, to be by said board administered for the use of the university, as contemplated by law at the time the property was, by the state of Louisiana, originally delivered to said board.”
In short, this suit is one, not to enforce the return of the property to the state of Louisiana under the provisions of Act No. 43 of 18S4, but an action instituted for the use and benefit of the “Administrators of the Tulane Education Fund,” against their protest, and in which the state of Louisiana attempts to substitute herself for said board of administrators. In a suit by A. for the use of B., the latter is the real plaintiff, of whom the court and the defendant are bound to take notice. Davis v. Taylor, 4 Mart. (N. S.) 135; Dayton v. Commercial Bank, 6 Rob. 17.
The very statute authorizing the institution of this suit restricts the authority of the Attorney General to a suit to annul the lease to Thomas Nicholson for the purpose of having the property “restored to the Board of Administrators of the Tulane Educational Fund.” See Act No. 17 of 1908, p. 17. In other words, the state is suing, as the guardian of the Tulane University, to annul a lease made by its representatives, and not to annul the legislative contract of 1884 by which the property was transferred in perpetuity to the board of administrators. As already stated, the only right the state has under the act of 1884 is to sue to recover the property for herself on the ground of breach of the contract by the defendant board.
We will, however, consider and determine the validity of the lease to Nicholson made in March, 1897.
All of the essential facts and circumstances relating to the Nicholson lease were determined by this court in Levert v. Daily States Publishing Company, 123 La/ 594, 49 South. 20G. Repetition of the evidence would serve no useful purpose.
We find that such lease was authorized by Act No. 94 of 1890, expressly empowering the board of administrators to lease, sell, or dispose of the immovable property transferred to them by the state under Act No. 43 of 1884, subject to th,e approval of the Governor of the state; that the said board in March, 1897, leased said property to Thomas Nicholson for an adequate price, and said contract was duly approved by the Governor of the state; that in making said lease the members of the board acted in good faith and for what they deemed the best interests of Tulane University, and the price was adequate according to values at the time; that Nicholson was not, as alleged, a person interposed for the president of the board; that the president of the board had no legal interest whatever in said lease at the time it was made and executed; and that his subsequent connection with the Tulane Improvement Company cannot affect the validity of said lease.
The state, which in 1890 gave to the board of administrators plenary power to lease, sell, or dispose of the property, comes into court after the lapse of 18 years, and alleges that the Legislature exceeded its constitutional powers in granting such authority.
It is first argued that Act No. 43 of 1884, subsequently adopted as a constitutional amendment, in providing that “the property so transferred may not be sold or disposed of except under legislative sanction” contemplated that the board of administrators should first make a tentative lease, sale, or disposition of the property, and then refer the agreement to the Legislature for ratification and approval. This is a strained construction of the terms of the statute. Logically and reasonably a mandate to sell should precede the contract of sale, and an agent or trustee would find it most difficult, if not impracticable, to dispose of property without a power of attorney. The uniform legislative *453 practice has been to authorize leases or sales of property in advance. Such acts are too numerous for citation. Act No. 94 of 1890 followed the usual legislative practice in such matters, and is not repugnant to Act. No. 43 of 1884. Moreover, we are not prepared to say that the Tulane Board, a perpetual corporation with the right of perpetual use, cannot make a 99-year lease under the provisions of Act No. 43 of 1884. Leases for such a term are valid both at the civil and common law.
The next objection is to the title of Act No. 94 of 1890, which reads as follows:
"An act to authorize the Board of Administrators of the Tulane Education Fund to lease, sell or dispose of the immovable property, transferred to them by the state, under Act No. 43 approved July 5th, 1884.”
The objection seems to be that the title does not recite that the act was intended to give the sanction required by Act No. 43 of 1S84. There is but one subject-mátter contained in the title, and the provisions of the act are confined to that subject-matter.
The next objection is that the act is a local or special law amending or extending the charter of a corporation, and therefore is repugnant to article 46 of the Constitution of 1S79.
Act No. 94 of 1890 is a supplement to Act No. 43 of 1884, and purports to provide the legislative sanction contemplated by the latter act, which subsequently became an amendment to the Constitution of 1879. Hence Act No. 94 of 1890 therefore cannot be unconstitutional on the ground mentioned.
Our conclusion is that the board of administrators was expressly authorized to make the lease to Nicholson, and that said contract is binding on the parties and their assigns and on the state.
It is therefore ordered, adjudged, and decreed that the verdict and judgment below be reversed, and it is now ordered that the de-1 mand of the state be rejected, and this suit be dismissed.
MONROE, J., takes no part.
See dissenting opinion of BREAUX, C. J., 51 South. 491. '