299 So.2d 454 (1974)
Wilmot McCAIN, Jr., et al., Plaintiffs-Appellants,
v.
CONTINENTAL CAN COMPANY, INC., Defendant-Appellee.
No. 12333.
Court of Appeal of Louisiana, Second Circuit.
July 1, 1974.
Rehearing Denied September 4, 1974.
Writ Refused November 8, 1974.
*455 Charles B. Bice, Winnfield, for plaintiffs-appellants.
Wright, Dawkins, James & Hogg, by Robert G. Dawkins, Ruston, Holloway, Baker, Culpepper & Brunson, by Bobby L. Culpepper, Jonesboro, for defendant-appellee.
Before AYRES, HALL and WILLIAMS, JJ.
Rehearing en Banc. Denied September 4, 1974.
WILLIAMS, Judge.
Plaintiffs-appellants, Wilmot McCain, Jr., Mary Elizabeth McCain Johnson and J. J. Johnson, filed this suit against defendant-appellee, Continental Can Company, Inc. to set aside and have declared null and void three long-term timber leases. Appellants allege their ancestor in title, J. E. Carter, executed two of the leases in 1947 and one in 1948, and these leases covering 2668 acres of land located in Winn Parish, Louisiana, have been assigned to and are now owned by Continental Can Company.
Defendant filed peremptory exceptions of prescription of five and ten years and of no cause of action. Defendant also filed a motion for summary judgment. From the judgment of the trial court sustaining defendant's plea of prescription and motion for summary judgment, this appeal has been perfected.
Plaintiffs contend the trial court erred in not finding the lease instruments void because: (1) the taking of lands out of commerce violate the doctrine of ownership as defined in the Louisiana Civil Code and is contrary to public policy in the State of Louisiana; (2) the lease instruments contain potestative conditions; (3) such agreements are totally without a consideration serious enough to support them; (4) the instruments are null in that a definite term of lease was not stipulated therein; and (5) the instruments are an attempt to create a separate timber estate in perpetuity contrary to the public policy of this state.
Alternatively, plaintiffs contend the rights of defendant under the instruments to remove timber from the lands have terminated or if not terminated, the court should fix a reasonable time for defendant's removal of such timber. Finally, plaintiffs contend the trial court erred in granting defendant's motion for summary judgment and sustaining its exceptions of prescription of five and ten years.
Primarily, the record consists of plaintiffs' petition, defendant's motion for summary judgment with affidavits and exhibits, and peremptory exceptions. Copies of the original Timber Deeds and Land Leases show them to be very similar in content. Each provide (a) the owner, J. E. Carter, as seller-lessor, conveys all timber, wood and forest products on the lands therein described to a named buyer-lessee; (b) seller-lessor leases to the buyer-lessee, or its successors and assigns the lands described therein for a period of ninety-nine years from date thereof with the "right to use the said lands in the future during the life of this contract for the purpose of growing timber, wood and other forest products, and promoting the supply, stand and growth of the timber, wood and forest products on the land, and removing and marketing the same from time to time and at will, which right of the vendee is in the nature of a lease of the land upon which the timber stands for said purposes,. . . ."; (c) buyer-lessee paid the sum of $25 per acre as consideration for the entire term of the lease; and agreed to pay annually the taxes levied against such lands. Failure to pay the annual taxes would cause the forfeiture by buyer-lessee of rights granted by the lease; and (d) seller-lessor retains any and all oil, gas or mineral privileges.
Plaintiffs' contention the lease agreements removed the lands from commerce is without legal merit. The trial court in its opinion clearly answered this, stating:
"As far as plaintiffs argue the leases take land out of commerce it would appear *456 the tracts were put into commerce instead by placement in the hands of a lessee engaged in the timber business for the purposes stated and recited in the leases and quoted earlier herein. On this point, the Court is of the opinion the contracts speak for themselves and are valid in conformity with public (policy) and morals and laws. The Court does not accept as valid plaintiffs' interpretation of Title II, Chapter 1 of the Louisiana Civil Code."
Each agreement provided it "shall remain in full force and effect for a period of 99 years from the date of this agreement." Plaintiffs argue there is no definite term in the agreement; that 99 years is an excessive term and the leases create a separate timber estate in perpetuity and therefore these contracts are null and void as contrary to the public policy of the State of Louisiana.
The Random House Dictionary of the English Language Unabridged Edition, 1966, states the word "definite" means "clearly defined or determined; not vague or general; fixed; precise; exact." The word "term" means "the time or period through which something lasts." Each instrument under review shows a "definite term" of 99 years as the length of time lessee could occupy and use the property for the purposes defined therein. Thus plaintiffs' contention the term of each agreement is not definite or is in perpetuity is contrary to the wording of the contracts and therefore cannot be sustained.
LSA-C.C. Art. 2684 provides:
"The duration and the conditions of leases are generally regulated by contract, or by mutual consent."
In State v. Board of Administrators of Tulane Education Fund, 125 La. 432, 51 So. 483 (1910) the court, in considering a lease having a term of 99 years, stated:
"* * * Leases for such a term are valid both at the civil and common law."
Professor A. N. Yiannopoulas of Louisiana State University Law School, in his Treatise on Civil Law Property, in Vol. 1 at page 277, § 95, note 109 states:
"* * * The Louisiana Civil Code does not specifically regulate the long-term lease. Article 2684 provides that `the duration and the conditions of leases are generally regulated by contract, or by mutual consent,' but Article 2474 [2674] requires that leases be granted `during a certain time.' Corresponding provisions in the French Civil Code have been interpreted to limit the maximum duration of a lease to ninety-nine years. See 10 Planiol et Ripert, Traite pratique de droit civil francais 574 (2d ed. 1956)."
Further support for such a term of years is found in Vol. 2 Part 2, Planiol Traite Elementaire De Droit Civil (an English translation by the Louisiana State Law Institute) at page 54:
"Art. 1728 Fixing of the Duration of the Lease.
Under the sole condition of not exceeding the extreme limit fixed by the law (99 years or three generations), the parties are free to fix the duration of the lease, as they please."
The contention that the term of 99 years is excessive finds no support in our Louisiana Civil Code or as stated by our Supreme Court in Civil Law.
Plaintiffs contend the contracts are null because of the stipulation if lessee failed to pay the annual taxes on the land, that portion of the land on which taxes were not paid should be released from the lease agreement. It is plaintiffs' position this stipulation creates a potestative condition as defendant may recede from the obligation at will by simply refusing or failing to pay the annual taxes. This argument is similar to that made by plaintiff in Franks v. Davis Bros. Lumber Company, 146 La. 803, 84 So. 101 (1920), where the court rejected this argument, stating:
"Counsel for Franks says that the lumber company was not bound by the stipulation *457 for the payment of the taxes, and hence he was not bound. It is true that, while the clause quoted is so worded that the purchaser of the timber might fail to pay the taxes on the land, and still not be liable to the vendor until a legal demand was made therefor, and that he might escape liability therefor altogether at any time, by renouncing the timber rights; still the contract must be construed as a whole, and in doing so we find that the lumber company paid $500 cash for the timber, placed the deed of record, and at the time Franks' suit was filed was proceeding to cut the timber. Thus there was not only a serious consideration, presently paid for the rights so conveyed, but the deed had been accepted, and Davis Bros. Lumber Company was undoubtedly bound by every obligation imposed upon it therein. We cannot separate the consideration flowing from the purchaser to the vendor, and say that the money paid was given only for the timber and the right to cut and remove it during the period of ten years first stipulated, and that the provision for the payment of taxes was the exclusive consideration for the extension beyond that time. We cannot assume that the lumber company would have been willing to enter into the contract without this provision for extension, and it was certainly within the power of Franks to have refused to grant it, if he had seen fit. The situation in principle is the same as in those cases in which it has been held that a stipulation in a lease contract for renewal, or for the purchase of the leased premises, was enforceable, as a part of the consideration for the lease, even though the lessee had not bound himself to renew or to purchase. Mossy v. Mead, 2 La. 157, 161; Lieuteaud v. Jeanneaud, 20 La.Ann. 327; Murphy v. Hussey, 117 La. 390, 41 So. 692. The clause requiring that the vendor should put the vendee in default by formal demand for the taxes notwithstanding he had assumed to pay them, in order to render the latter liable therefor to the former, was undoubtedly a hard one, but the contract is so written, and our province is to interpret the agreement as made. Franks had the right to demand the payment, and upon the lumber company's refusal to pay, to have annulled the contract. . . ."

[84 So. 101, 103]
The Franks case was cited with approval by our Supreme Court in Davis Bros. Lumber Co. v. Smitherman, 156 La. 607, 100 So. 785 (1924) and the court further stated:
"We believe that the extension for removal of the timber was an integral part of the contract, that it was agreed to by the parties, not only in consideration of the future payment by plaintiff of taxes upon the land, but also in consideration of the cash received by the vendors at the execution of the contract. The stipulation cannot be viewed as a separate and distinct agreement, but is in the nature of an option resting upon an actual consideration of which a part had already been paid."

[100 So. 785, 786]
Plaintiffs further argued the consideration for the leases was not serious. In his treatment of this argument, the trial judge, in denying the merit thereof, clearly, forcefully and correctly stated:
"Price is one of the essentials required in any lease. Louisiana Civil Code Article 2670. It must be certain, determined and consist of money. Ibid. Art. 2671. Article 2674 recites:
`To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him.'
"This has been interpreted to require serious rent in proportion to the value of the thing leased. Northeast Louisiana *458 Detachment of Marine Corp League v. City of Monroe, 253 So.2d 107 (2nd Cir. 1971) writs denied, 260 La. 18, 254 So.2d 619 (1971).
"Murray v. Barnhart, 117 La. 1023, 42 So. 489 (1906) is considered a landmark decision pertaining to considerations for lease. In it, Justice Provosty noted in common law states nominal consideration is sufficient. However, he states:
`* * * But under our law the consideration "must be serious": "it must be not all out of proportion with the value of the thing." Art. 2464 Civ. Code. That article has special reference to the price of a sale, but the principle it involves is not peculiar to sales. It is a general principle of the civil law and as old as the civil law itself.'
"He goes on to note the dollar consideration common in common law practice is a trifle and ordinarily no intention is present that it be paid at all. In the contracts under consideration, however, plaintiffs' ancestor in title was paid $66,718.25 which was no trifle in 1947 and 1948 or now. The affidavit attached to the motion for summary judgment indicates it was in fact paid and the leases reflect that as well.
"The money alone was not the only benefit received by lessor. Under Louisiana mineral laws he could not sell his lands outright and retain minerals perpetually without production. By use of the lease, lessor could and did retain his mineral ownership without burden of an obligation to produce within a limiting period. This would have to be viewed as an additional motivating factor in lessor's consenting to lease his surface rights for timber production.
"This court is of the opinion that the monetary payments involved and other advantages that flowed to lessor being (1) immediate use of all rents due over term of the lease, (2) payment of taxes, (3) retention of minerals, (4) prospective return of the lands after 99 years for benefit of lessor's heirs or assigns, and (5) the obligation on lessee to allow full ingress and egress and right of way and cooperation in use of areas of the surface needed to develope minerals, were together a sufficient inducement to constitute legal cause in the Civil Law sense to support the leases in question."
We find there are no material facts at issue or in dispute here and the decision of the trial court granting a summary judgment is legally correct. Having reached this conclusion we find it unnecessary to consider the peremptory exception of prescription which was sustained by the trial court.
For these reasons the judgment of the district court is affirmed at plaintiffs-appellants' cost.
Affirmed.